Complaint of AMERICAN EXPORT LINES, INC., formerly known as American Export Isbrandtsen Lines, Inc., as owner of the S.S. C.V. SEA WITCH, seeking exoneration from or limitation of liability.

No. 73 Civ. 2507 (CHT).

United States District Court,
S. D. New York.

Sept. 16, 1977.

See also, D.C., 73 F.R.D. 454.

Burlingham Underwood & Lord, New York City, for Bath Iron Works, Inc.; Kenneth H. Volk, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for Esso Marine (Belgium), Esso Belgium, Standard Tankers (Bahamas) Co. Ltd. and Exxon Corp.; Alexander E. Rugani, Paul F. McGuire, New York City, of counsel.

Townley & Updike, New York City, for Sperry Rand Corp.; Phillip D. Pakula, Edward E. Vassallo, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the Government; Gilbert S. Fleischer, Christopher H. Mansuy, New York City, of counsel.

TENNEY, District Judge.

In the now four-year-old litigation arising from the collision between the S/S c.v. SEA WITCH and the S/S ESSO BRUSSELS in New York Harbor on June 2, 1973, three new procedural motions have been submitted to the Court. Movants are Bath Iron Works Corporation ("Bath"), third-party defendant; Sperry Rand Corporation ("Sperry"), claimant and third-party defendant; and Esso Belgium, Standard Tankers (Bahamas) Company Limited and Exxon Corporation ("Exxon Group"), claimants, all of whom request leave to amend pleadings and assert cross-claims against the United States pursuant to Rules 13(g) and 15(a) of the Federal Rules of Civil Procedure ("Rules"). For the reasons stated below, the motions are granted as to Bath and Sperry and denied as to the Exxon Group.

The United States, which opposes these motions, is itself both claimant (for cargo lost aboard the SEA WITCH) and third-party defendant in the above-captioned proceedings. It was cast in its defensive posture by an order of this Court dated May 19, 1977, permitting American Export Lines, Inc. ("American Export"), owners of the SEA WITCH and petitioners for limitation, to assert a cross-claim for indemnity against the sovereign under the Suits in

Admiralty Act, 46 U.S.C. §§ 741 *et seq.* That order was issued pursuant to a report by United States Magistrate Martin D. Jacobs, to whom the American Export motion was referred to "hear and determine." 28 U.S.C. § 636(b)(1)(A).

■ The instant motions and that considered by Magistrate Jacobs in his report arise out of the same concern: there are allegations that the steering gear of the SEA WITCH was defectively designed and negligently installed during construction and that the United States bears responsibility for approving the allegedly deficient gear in derogation of Coast Guard regulations. 46 C.F.R. § 58.25. In the American Export hearing, the particular focus of the Magistrate's inquiry was the Government's contention that impleader against it was actually a suit against a joint-tortfeasor and thus was time-barred by the two-year statute of limitations contained in 46 U.S.C. § 745. Petitioner American Export countered that it wished to plead a cause of action in indemnity, a claim which would not arise until its own liability, if any, were fixed.[1] Without endorsing the merits of American Export's claim, Magistrate Jacobs found "at least a minimal standard of merit" in the legal sufficiency of the indemnity claim. *Glazer Steel Corporation v. Yawata Iron & Steel Co.,* 56 F.R.D. 75, 80 (S.D.N.Y. 1972). He thus concluded that American Export ought at least be permitted to advance the purported contractual and tort bases of the claim over. The same arguments are made in the instant motions and, at least as to Sperry and Bath, this Court concludes that their indemnification pleading follows *a fortiori* from the similar grant to American Export.

While the conclusion is by no means certain, there is some authority that a contractual relationship between indemnitor and indemnitee may be required for a maritime indemnification claim to survive on the merits. *See United New York Sandy Hook Pilots' Ass'n v. United States,* 191 F.Supp. 893 (S.D.N.Y.), *aff'd,* 355 F.2d 189 (2d Cir. 1965); *cf. Hidick v. Orion Shipping & Trading Co.,* 157 F.Supp. 477 (S.D.N.Y.1957), *aff'd,* 278 F.2d 114 (2d Cir.), *cert. denied,* 364 U.S. 830, 81 S.Ct. 67, 5 L.Ed.2d 56 (1960). *But see United States Lines v. United States,* 470 F.2d 487 (5th Cir. 1972); *Chicago, Rock Island & Pacific Railway Co. v. United States,* 220 F.2d 939 (7th Cir. 1955); *Central Soya Company v. Economy Boat Store,* 411 F.Supp. 214 (E.D.Mo.1976). In the case at bar there is a contract, although not one of indemnity, to which American Export, Bath and the Government (acting through the Maritime Subsidy Board) were parties. It is asserted that its terms governed certain aspects of the construction and eventual Government approval of the SEA WITCH. The contract is relied on in part by American Export and Bath to raise a theory of implied indemnity. (Sperry, as a subcontractor, was not a party to this contract).

Beyond contractual duty, however, American Export (in the Magistrate's hearing) and Bath, Sperry and the Exxon Group (in the current motion) invoke general tort principles of indemnity in seeking to implead the Government past the normal two year time-bar of 46 U.S.C. § 745. At this stage it is unnecessary to decide whether movants can prevail on any such theory. However, there are indications that maritime tort law is becoming increasingly similar to its modern civil counterpart. *See, e. g., United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (replacing old admiralty collision rule of divided damages with comparative negligence standard). In a civil tort action,

---

1. Restatement of the Law, Restitution § 77 reads in pertinent part:

    *"Time When Right of Indemnity Arises*

    (1) A person who, in whole or in part, has discharged a duty owed him but which, as between himself and another, should have been discharged by that other, is thereupon entitled to indemnity if the time for performance has arrived.

    (2) If he discharged the duty before the time for performance, his right to indemnity arises at the time for performance."

Nevertheless, a claim over for indemnification "may be tendered in a pending action in which the primary liability is being adjudicated." *Atlantic Aviation Corporation v. Estate of Costas,* 332 F.Supp. 1002, 1007 (E.D.N.Y.1971).

"[t]he claimant for complete indemnity . . . proceeds on contract or implied contract, or on a comparative analysis of the contributions of conduct and *status or relationship that the claimed indemnitor and indemnitee bring to the damage causing episode. If the analysis of the contract or status or conduct-relation of the indemnitor and indemnitee establishes that the indemnitor is the one ultimately responsible for the damage arising out of the episode it is because, however difficult it may be to give it a precise expression in familiar legal categories, the indemnitor is in breach or at fault toward the indemnitee.*" (Emphasis added.)

*Atlantic Aviation Corporation v. Estate of Costas,* 332 F.Supp. 1002, 1005 (E.D.N.Y. 1971).

The question of the Government's duty toward the proposed indemnitees is, in the case of Bath and Sperry, a subject fit for fuller argument. Bath and Sperry were parties to the construction of the SEA WITCH; they are asserting their reliance on Government approval of specifications for her steering gear; as third-party defendants they are exposed to heavy liability should negligent design and construction be found. There is, then, some "relationship" between movants Bath, Sperry and the Government in this matter, one which could arguably raise a claim of indemnification.[2] The Supreme Court has said regarding the standard to be applied to a Rule 15(a) motion "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It is by this test that the Bath and Sperry motions to amend are granted.

By contrast, the Exxon Group claim for "indemnification" is not grounded in any relationship between it and the United States of America upon which indemnity liability could be based. The ESSO BRUSSELS, owned by a member of the Exxon Group, was lying at anchor when she was rammed by the SEA WITCH. The condition of her steering gear is not in question; the Exxon Group asserts no relationship with the United States beyond that of victim of an alleged "breach of a statutory duty owed by the United States of America through the Coast Guard." Memorandum of Law for Claimants Esso Belgium, Standard Tankers (Bahamas) Company Limited and Exxon Corporation at p. 7. While certain claims have been filed against the ESSO BRUSSELS, and her owners have themselves petitioned for exoneration from or limitation of liability in a separate action, the ESSO BRUSSELS will be liable in these claims only if it is shown that she breached a duty of care independent of that which may have been owed by the Government to the SEA WITCH interests. This Court cannot agree that if the Government acted negligently in approving the SEA WITCH it is then liable for acts of the Exxon Group and the ESSO BRUSSELS. At the most it can be said only that the United States may have breached a duty of due care which eventuated in damage to the ESSO BRUSSELS. Breach of such a duty makes one a joint or concurrent tortfeasor, *Twenty Transfer Corp. v. Tracy Towing Line,* 69 A.M.C. 1207 (S.D.N.Y. 1969), but it does not make one an indemnitor. Therefore, the cross-claim of the Exxon Group is time-barred by the two-year statute of limitations in 46 U.S.C. § 745. Its cause of action against the United States, if any, accrued at the time of the collision.

Because of the length of time this matter has already been in litigation, the grant of leave to amend to Bath and Sperry should not be interpreted as sanctioning further

---

**2.** While the denial of leave to amend at this stage would not foreclose the assertion of a later claim for indemnity should any such duty emerge at trial, it is traditional in admiralty limitation proceedings to permit the marshalling and settlement of as many claims in one action as justice will allow. *British Transport Commission v. United States,* 354 U.S. 129, 77 S.Ct. 1103, 1 L.Ed.2d 1234 (1957); *Hartford Accident & Indemnity Co. v. Southern Pacific Co.,* 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612 (1927).

delay. Therefore, the Court directs that whatever discovery proceedings follow this order be conducted expeditiously and cooperatively among the parties involved. *Williams v. Johnson & Johnson,* 50 F.R.D. 31 (S.D.N.Y.1970).

So ordered.